IN THE MATTER OF THE APPLICATION OF RICHARD LAMB TO CONTEST THE VALIDITY OF AN ELECTION HELD IN NORTHAMPTON TOWNSHIP, BURLINGTON, UNDER THE PROVISIONS OF CHAPTER 2 OF THE LAWS OF 1918.

Argued December 9, 1918—Decided December 26, 1918.

1. The failure to give the notice required by chapter 2 of the laws of 1918. of a hearing on the petition for an election to determine whether intoxicating liquor shall be permitted to be sold as a beverage in a municipality deprives the council of jurisdiction to submit the question at the election.
2. The validity of an election, on the question of the sale of intoxicating liquor, submitted at the general election, cannot be affected because the provisions of chapter 150 of the laws of 1918, relating to the method of obtaining the soldiers' votes, were not complied with, on the theory that the soldiers to whom ballots might have been sent would have voted on the question submitted, and against prohibiting the sale of intoxicating liquors.

On petition, &c.

Before Justice KALISCH, by statute.

For the petitioner, *Harry Heher.*

For the respondent, *V. Claude Palmer.*

The opinion of the court was delivered by

KALISCH, J.    At the general election held in November, 1918, the question whether or not the sale of intoxicating liquor as a beverage should be prohibited was submitted to the voters of Northampton township to be voted on.

From a written stipulation between counsel, and from the testimony taken before me, I find the following facts:

1. That at the time of the general election, on November 5th, 1918, and for sixty days prior thereto, there were at least two hundred qualified voters of the township of Northampton, in the county of Burlington, in the military service of

the United States, and absent from the aforesaid township; and that of this number, at least, eighty of them were during such period of time in camps and military stations in the United States; that the total registered vote for the election held was sixteen hundred and fifty three, out of which number there were eleven hundred and eighty-five votes cast; and of these votes five hundred and seventy-six were cast in favor of prohibiting the sale of intoxicating liquor as a beverage in said township, and five hundred and eighteen against such prohibition, leaving a majority in favor of prohibition of fifty-seven; that of the two hundred electors of the township in the military service, twelve of them voted, their ballots being transmitted by the secretary of the state of New Jersey to the county board of canvassers of Burlington county, four of which ballots were cast in favor of and three against the prohibition of the sale of intoxicating liquor as a beverage in the township, which increased the majority vote in favor of prohibition from fifty-seven to fifty-eight; that the clerk of the township did not mail to any of the qualified electors of the township in the military service of the United States at any time prior to the general election, a ballot for said election, or a copy of chapter 150 of the laws of 1918, or printed or other directions for voting and transmitting a ballot or envelopes as required by said act, and did nothing to carry out its provisions; that the said clerk did not receive from the secretary of the state of New Jersey, or anyone else, the names and addresses of the qualified electors of the township in the military service of the United States; that the secretary for war of the United States did not object to the forwarding by the secretary of the state of New Jersey the names of the persons in the active military service of the United States, as set out in section 5 of chapter 150 of the laws of 1918; that the secretary of state sent agents to military camps in the United States to distribute ballots among qualified voters in this state, and mailed ballots to commanding officers of such military stations or camps, to be distributed among qualified voters of this state there stationed.

As this was not a special but general election, I think the

irregularities in endeavoring to procure the soldier vote ought not to vitiate the result reached on the question submitted. The date on which a general election was to be held was a matter of common knowledge.

It will be presumed that a voter, whether in the military service of the United States or not, had knowledge of the day when the general election was to take place. Under section 9 of the act of 1918, the voter may vote an unofficial ballot in lieu of an official one, &c. It cannot, therefore, be fairly said that he was not afforded an opportunity to vote, or that the election was unfair. Even if it must be assumed that the provisions of chapter 150, relating to the method of obtaining the soldiers' vote, was not complied with, and that the soldiers to whom ballots might have been sent would have voted on the question submitted, against prohibiting the sale of intoxicating liquor, &c., and thus have changed the result of the election, as declared, in the view I take of the law, it cannot affect the validity of such election, for the reasons already given.

But the facts of this case involve a more fundamental question than the one referred to and disposed of. The question is a jurisdictional one. On this branch of the case I find the facts to be as follows: A petition was filed under chapter 2 of the laws of 1918, on June 12th, 1918, with the clerk of the township of Northampton, for an election to determine whether or not the sale of intoxicating liquors as a beverage in the township of Northampton, in the county of Burlington, shall be prohibited. The clerk thereupon fixed June 20th, 1918, as the time for the hearing, and posted six notices on June 12th. The only publication of the notice was in the "Mount Holly News" of June 18th, which was issued and circulated on that day, which was two days before the day set for the hearing. In the case of Cooper, prosecutor, v. Township of Frelinghuysen, a case not yet reported, the Supreme Court, in an opinion by Mr. Justice Parker, in construing the section of the act requiring advertisement in the newspapers, held, as follows: "In the Frelinghuysen case the advertisement was had, but not at least five days before the council meeting. On this point the language of the act is a trifle obscure, but we

think the plain legislative intent was that there should be five days' notice by advertising as well as by posting."

And the learned justice, after discussing the nature of the proceedings before the council upon the petition for the submission of the question to the votes of the electorate, says: "Hence, it is obvious that the hearing is judicial or, at least, *quasi*-judicial, and, according to a well-known rule, the statutory procedure should be strictly followed, especially as relates to the giving to persons interested proper notice and an opportunity to be heard."

The law, as laid down in the case referred to, is controlling here. The failure to give the statutory notice in the newspaper at least five days before the council meeting, deprived the council of jurisdiction to submit the question at the election held. For the reason given, the election on the question whether or not the sale of intoxicating liquor as a beverage should be prohibited in the township of Northampton was invalid and must be set aside.